**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHNATHAN JOHNSON,**

                                **Plaintiff,**

        **vs.**                                                      **9:14-cv-00715**
                                                                     **(MAD/DJS)**

**BRANDI WHITE, Grievance Supervisor, Upstate**
**Correctional Facility; SCOTT WOODWARD, Grievance**
**Supervisor, Upstate Correctional Facility; SANDRA**
**DANFORTH, Deputy Superintendent of Upstate Correctional**
**Facility; ANTHONY ANNUCCI, Acting Commissioner, Upstate**
**Correctional Facility; NANCY SMITH, Nurse, Upstate**
**Correctional Facility; DAVID ROCK, Prison Former**
**Superintendent, Upstate Correctional Facility; MAUREEN**
**SIENKO, Optometrist Upstate Correctional Facility;**
**MARTHA STURGEN, Nurse Administrator, Upstate**
**Correctional Facility,**

                                **Defendants.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

**COUCH, WHITE LAW FIRM**                       **PATRICK J. HIGGINS, ESQ.**
540 Broadway                                    **STEPHEN D. ROSEMARINO, ESQ.**
P.O. Box 22222
Albany, New York 12201-2222
Attorneys for Plaintiff

**NEW YORK STATE ATTORNEY**                     **STEPHANIE J. CALHOUN, ESQ.**
**GENERAL - BUFFALO**
Main Place Tower
350 Main Street
Suite 300A
Buffalo, New York 14202
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Johnathan Johnson, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action against nine defendants pursuant to 42 U.S.C. § 1983 claiming that his constitutional rights were violated while he was incarcerated at Upstate Correctional Facility ("Upstate C.F."). *See* Dkt. No. 5. Plaintiff claims that Defendants, who were all employees of Upstate C.F. during the relevant time period, were deliberately indifferent to a serious medical condition that substantially impaired his daily activities and that he was denied access to the inmate grievance procedure. *See id.*

Currently before the Court are the parties' motions *in limine*.

## II. BACKGROUND

Plaintiff commenced this action on December 26, 2013 in New York State Supreme Court, Franklin County. *See* Dkt. No. 5. Defendants removed the action from state court on June 13, 2014 and paid the statutory filing fee.[1] Dkt. No. 1. Magistrate Judge Treece issued a Mandatory Pretrial Discovery and Scheduling Order on June 18, 2014, which set the discovery deadline as December 18, 2014 and the dispositive motion deadline as February 18, 2015. Dkt. No. 3. On March 20, 2015 this Court denied Defendants' letter motion for an extension, nunc pro tunc, of the dispositive motion deadline. Dkt. Nos. 23, 26. Plaintiff was appointed pro bono counsel Patrick J. Higgins on March 26, 2015. Dkt. No. 28. On September 2, 2015 Mr. Higgins disclosed to Defendants the identity and report of Plaintiff's intended expert witness, Dr. Richard S. Witlin. Dkt. No. 64 at 2. This Court conducted a final pre-trial conference on October 20, 2015 and discussed the issues presented in their motions *in limine*.

---

[1] After several subsequent filings, *see* Dkt. Nos. 4, 9, 10, 19, 20, this Court settled the removal and remand issue in favor of the federal court retaining jurisdiction on February 4, 2015, Dkt. No. 21.

The conduct giving rise to the instant action surrounds a period of time from August 8, 2013 through January 9, 2014, during which Plaintiff alleges he was denied his prescription eyeglasses. Dkt. No. 5; Dkt. No. 45 at 2. Plaintiff was examined by optometrist Defendant Maureen Sienko on August 8, 2013. Dkt. No. 51 at 2. Defendant Sienko determined that Plaintiff was nearsighted and ordered him a pair of new eyeglasses because his previous pair had been broken. *Id.* After a period of approximately 145 days – during which Defendants claim that Plaintiff was unavailable for several optometry appointments and Plaintiff claims that Defendants failed to provide him with his glasses despite filing repeated grievances – Plaintiff received his prescription eyeglasses. *See generally* Dkt. No. 5; Dkt. No. 51 at 2-3.

### III. DISCUSSION

**A.      Standard**

The main purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). A court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *See Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94 Civ. 5220, 1998 WL 665138, *3 (S.D.N.Y. Sept. 25, 1998). Courts considering a motion *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). Alternatively, the court is "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling" at trial as "the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41–42.

"While 'dismissing claims is not the prototypical purpose of a motion *in limine*,' such motions have sometimes been addressed on the merits and have sometimes 'been construed as or converted into motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure or motions for summary judgment under Rule 56." *Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 424 (S.D.N.Y. 2004) (quoting *Fouriner v. McCann Erickson*, 242 F. Supp. 2d 318, 334-35 (S.D.N.Y. 2003)). Such use of the motion *in limine* to dismiss claims should be limited to circumstances when "undisputed facts of the case compel the conclusion that, as a matter of law, [the other party] cannot satisfy the statutory criteria for [their claim]." *Fouriner*, 242 F. Supp. 2d at 334. However, motions *in limine* that are merely "re-hashes of arguments made in [] earlier summary judgment motion[s]" should be denied. *Baxter Diagnostics*, 1998 WL 665138, at \*10.

## B. Defendants' Motions

### 1. Preclude Plaintiff From Introducing Expert Testimony

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). "Courts have held that preclusion under Rule 37(c)(1) is 'automatic absent a determination of either substantial justification or harmlessness.' However, '[d]espite the automatic nature of Rule 37(c)(1) . . . [p]reclusion of evidence is generally a disfavored action.'" *Engler v. MTD Products, Inc.*, 304 F.R.D. 349, 355 (N.D.N.Y. 2015) (internal quotations and citations omitted). Before precluding evidence for a party's failure to properly disclose an expert witness, the court must consider "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice

suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997).

The Court ruled in the October 20 final pre-trial conference that Defendants' motion to preclude Plaintiff from introducing expert testimony is denied. Mr. Higgins was not appointed until well after the discovery deadline had passed. *See* Dkt. No. 28. Mr. Higgins gave notice to Defendants' counsel disclosing the expert's identity and his report on September 2, 2015. During this conversation, Mr. Higgins offered Defendants an opportunity to obtain their own expert without objection, notwithstanding the expiration of the discovery deadline. Dkt. No. 64 at 6. Defendants did not obtain their own expert despite having ample time to do so before the start of trial on October 26. Thus, Plaintiff's retention of Dr. Witlin after the discovery deadline was both justified and harmless and Defendants' motion to preclude Plaintiff's expert's testimony is denied.

### 2. Preclude Plaintiff from Testifying as an Expert Regarding His Injuries

A lay witness may not testify as to the underlying cause of a medical condition that is beyond his or her personal knowledge. *See Saari v. Merck & Co., Inc.*, 961 F. Supp. 387, 392 (N.D.N.Y. 1997) ("[W]here there are complex medical issues, in order for plaintiff to prove that her alleged injuries were caused by defendants' products, she must introduce expert medical testimony establishing causation."). However, a witness may testify as to individual symptoms that he has experienced so long as he does not give a conclusion as to the underlying medical cause of such condition. *See Fane v. Zimmer, Inc.*, 927 F.2d 124, 131 (2d Cir. 1991) (quoting *Meiselman v. Crown Heights Hosp.*, 285 N.Y. 389, 396 (1941)) ("[W]here the matters are within the experience and observation of the ordinary jurymen from which they may draw their own conclusions and the facts are of such a nature as to require no special knowledge or skill, the

opinion of experts is unnecessary.").  Since the Court has denied Defendants' motion to preclude

Plaintiff's expert and because this issue is best decided at the time of trial, the court will reserve

on this part of Defendants' motion.

### *3. Dismiss Certain Defendants for Lack of Personal Involvement*

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the

complainant to a deprivation of a right secured by the Constitution and laws."  *Rizzo v. Goode*,

423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983).  Not only must the conduct deprive the

plaintiff of rights and privileges secured by the Constitution, but the actions or omissions

attributable to each defendant must be the proximate cause of the injuries and consequent

damages that the plaintiff sustained.  *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y.

1991) (citing *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481, *reh. denied*,

445 U.S. 920, 100 S. Ct. 1285, 63 L. Ed. 2d 606 (1980)).  As such, for a plaintiff to recover in a

section 1983 action, he must establish a causal connection between the acts or omissions of each

defendant and any injury or damages he suffered as a result of those acts or omissions.  *See id.*

(citing *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619

(1979)) (other citation omitted).

"It is well settled in [the Second Circuit] that personal involvement of defendants in

alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Colon*

*v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.

1994)).  Therefore, a supervisory official may not be held liable solely on the ground that they

held a position of authority.  *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citation

omitted).  However, supervisory personnel may satisfy the personal involvement requirement if

6

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation
> through a report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant
> exhibited deliberate indifference to the rights of inmates by failing
> to act on information indicating that unconstitutional acts were
> occurring.

*Colon*, 58 F.3d at 873.[2]

"A plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must allege that the supervisor was personally involved in the alleged constitutional deprivation." *Rivera v. Fischer*, 655 F. Supp. 2d 235, 237 (W.D.N.Y. 2009). Merely writing a single letter of complaint generally does not provide the personal involvement necessary to maintain a section 1983 claim against an individual defendant. *See id.* at 238. However, if the official "personally look[s] into the matters raised in the letter, or otherwise acts on the prisoner's complaint or request, the official may be found to be personally involved." *Id.* (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)). Moreover, *pro se* allegations that a prisoner sent multiple letters to a prison official, that the official was allegedly fully aware of a course of unconstitutional conduct under his control, and that the official failed to act in response to such letters should not be dismissed for failure to plausibly allege personal involvement. *See Ferrer v. Fischer*, No. 9:13-CV-0031, 2014 WL 1763383, *2-3 (N.D.N.Y. May 1, 2014) (citing *Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013)).

---

[2] The Court acknowledges the parties' discussion regarding the pleading standard for supervisory liability under section 1983 as discussed in *Colon* and *Ashcroft v. Iqbal*, 566 U.S. 622 (2009). *See* Dkt. No. 32-1 at 8; Dkt. No. 64 at 9. However, the Court declines to decide if *Iqbal* has heightened the requirements for showing a supervisory official's personal involvement as the Second Circuit has not decided this issue, *see e.g.*, *Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013), and the outcome in the instant motion would be identical under each standard.

### a. Defendant Karen Bellamy

Plaintiff agreed to dismiss with prejudice Defendant Karen Bellamy from the case. Dkt. No. 64 at 9 n.2. This withdrawal was discussed at the October 20 pre-trial conference and Ordered by the Court.

### b. Defendant Anthony Annucci

Defendant Annucci is the acting commissioner of Upstate C.F. Plaintiff contends that he wrote a complaint letter to Defendant Annucci concerning his prescription glasses on December 5, 2013. Dkt. No. 5 at ¶ 16. Plaintiff contends that Defendant Annucci was personally involved both by his receipt of this letter and his subsequent lack of action regarding the situation involved. *See* Dkt. No. 64 at 10. Plaintiff relies on *Grullon* to argue that alleged receipt of a letter and subsequent failure to act is sufficient personal involvement to withstand dismissal. Dkt. No. 64 at 10. The Second Circuit in *Grullon* held that the district court erred in dismissing, without leave to amend, a *pro se* plaintiff's complaint for failure to sufficiently allege personal involvement. *Grullon*, 720 F.3d at 139. However, the Second Circuit articulated that the complaint as pled, which merely alleged the receipt of a single complaint letter by the warden, was insufficient to plausibly allege the supervisor's personal involvement. *Id.*

Defendant Annucci was under no obligation to respond to Plaintiff's letter and it is well settled that mere receipt of a single letter is insufficient to establish personal involvement. *See Rivera*, 655 F. Supp. 2d at 238. Moreover, Plaintiff does not contend that Defendant Annucci personally looked into the matter, passed the complaint on to any other individual, or was aware of any unconstitutional course of conduct under his control. *See Rivera*, 655 F. Supp. 2d at 238; *Ferrer*, 2014 WL 1763383, at *2-3; Dkt. No. 64 at 10. The Court is unpersuaded by Plaintiff's

reliance on *Grullon* given the differing procedural postures and that granting leave to amend in this case would be highly prejudicial due to the trial date being less than one week away. Further, Plaintiff failed to provide any further allegations of Defendant Annucci's personal involvement in his response to Defendants' motion. *See* Dkt. No. 64 at 10. Therefore, Defendants' motion to dismiss the claims against Defendant Annucci for lack of personal involvement is granted.

### c. *Defendant David Rock*

"[A] supervisor's mere denial of a grievance is insufficient to establish personal involvement[.]" *McClenton v. Menifee*, No. 05 Civ. 2844, 2006 WL 2474872, *10 (S.D.N.Y. Aug. 22, 2006). Plaintiff's only allegation against Defendant Rock is that he responded to Plaintiff's grievance concerning his eyeglasses in a letter stating "an investigation by Maureen Sienko and Martha Sturgen . . . and completed by chart review (sic) the Plaintiff's eyeglasses were ordered at Wallkill Correctional Facility. And once they are received they will be scheduled to be issued at the next optometry clinic." Dkt. No. 5 at ¶ 12. Plaintiff has not provided any additional allegations of Defendant Rock's personal involvement in response to Defendants' motions. *See* Dkt. No. 64. Thus, Defendants' motion to dismiss the claims against Defendant Rock for lack of personal involvement is granted.

### d. *Defendant Nancy Smith*

Plaintiff has not alleged that Defendant Smith had any personal involvement in the instant case. There is no indication that Defendant Smith played any role in treating Plaintiff for the condition underlying this case and her only connection to Plaintiff is that she is a Nurse at Upstate C.F. Therefore, Defendants' motion to dismiss the claims against Defendant Smith for lack of personal involvement is granted.

### e. Defendant Sandra Danforth

Plaintiff alleges that Defendant Danforth denied his encumbrance request for special

lenses. Dkt. No. 5 at ¶ 8. "Where a prison doctor denies medical treatment to an inmate, that

doctor is personally involved in the alleged constitutional violation." *Price v. Reilly*, 697 F. Supp.

2d 344, 365 (E.D.N.Y. 2010). Drawing all reasonable inferences in Plaintiff's favor, Defendant

Danforth's denial of Plaintiff's encumbrance request can be characterized as equivalent to denying

him access to his prescription glasses and, thus, is sufficient to allege her personal involvement.

Defendants' motion contends that Defendant Danforth's actions did not amount to a

deliberate indifference to Plaintiff's serious medical needs. Dkt. No. 32-1 at 9-10. This standard

requires showing that "the prison official knew of and disregarded the plaintiff's serious medical

needs." *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (quoting *Chance v. Armstrong*,

143 F.3d 698, 703 (2d Cir. 1998)). Liberally construed, Plaintiff's complaint plausibly alleges

that Defendant Danforth knew of Plaintiff's condition and disregarded his need. *See Fouriner v.*

*McCann Erickson*, 242 F. Supp. 2d 318, 334-35 (S.D.N.Y. 2003) (discussing the standard for

treating a motion *in limine* as a motion to dismiss). Therefore, Defendants' motion to dismiss the

claims against Defendant Danforth is denied.

### 4. All Grievance Claims Should be Dismissed

"[T]here is no constitutional right of access to the established inmate grievance program."

*Rhodes v. Hoy*, No. 9:05-CV-836, 2007 WL 1343649, *6 (N.D.N.Y. May 5, 2007); *see also Davis*

*v. Buffardi*, No. 9:01-CV-0285, 2005 WL 1174088, *3 (N.D.N.Y. May 4, 2005) ("Participation in

an inmate grievance process is not a constitutionally protected right."). Plaintiff claims that he

was denied access to the grievance procedures of Upstate C.F. despite filing two grievances and

one appeal during the relevant time period of this case.  *See* Dkt. No. 5 at ¶ 10-15.  As this is not a cognizable claim, Defendants' motion to dismiss Plaintiff's denial of access to the grievance program claims is granted.

### 5. *Limiting Plaintiff's Damages*

The Prisoner Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ."  42 U.S.C. § 1997e(e).  Defendants argue that Plaintiff is only entitled to nominal damages because he cannot prove an actual injury due to his allegedly minor medical condition.  Dkt. No. 32-1 at 12.  However, the determination of actual injury is a factually specific question which should be decided after Plaintiff has had an opportunity to present his case.  *See Dolberry v. Levine*, 567 F. Supp. 2d 413, 417-18 (W.D.N.Y. 2008) (collecting cases discussing the actual injury threshold). Therefore, the Court denies Defendants' motion on this ground without prejudice.  Defendants may renew this motion at the close of Plaintiff's case.

## C.      Plaintiff's Motions

During the October 20 pre-trial conference the Court discussed Plaintiff's motions and the parties agreed to each of Plaintiff's motions *in limine* except for those numbered three (3) and four (4).  *See* Dkt. No. 64.  The Defendants agreed not to introduce the following: (1) Plaintiff's felony convictions dating back more than ten years pursuant to Federal Rule of Evidence 609(b); (2) Plaintiff's disciplinary record during the entirety of his incarceration; (5) Plaintiff's history of grievances and the facts underlying them; (6) court decisions, opinions, or orders that reference Plaintiff's litigation or grievance history; (7) Plaintiff's designation as an alleged three strikes

11

litigation filer; (8) any reference or evidence to his other litigation or claims against DOCCS; and

(9) any of Plaintiff's other arrests and related extrinsic evidence. Given this agreement, the Court

denies each of those motions as moot.

Plaintiff's third motion *in limine* seeks to exclude evidence of Plaintiff's sentence, time in

the Secure Housing Unit ("SHU"), reasons for being in SHU, parole status, and expected release

date. Dkt. No. 55 at 7. Plaintiff argues that this evidence is unfairly prejudicial to him under

Rule 404(a), (b) and Rule 403 of the Federal Rules of Evidence ("FRE"), and is not relevant or

probative to the instant action under Rule 401 and Rule 402. *See id.* The Court denies Plaintiff's

motion regarding his sentence, parole status, and expected release date as moot given Defendants'

agreements at the pre-trial conference not to introduce such testimony. The Court reserves

judgment on any testimony involving the SHU until the time of trial because, based upon the

parties' submissions, a ruling would be premature.

Plaintiff's fourth motion *in limine* seeks to exclude all 800 pages of Plaintiff's medical

records except for those concerning eye care from August 8, 2013 to January 9, 2014, and those

marked by Plaintiff as a trial exhibit. *Id.* at 8. Plaintiff argues that these records should be

excluded under FRE Rules 401, 402, and 403 because they are not relevant to Plaintiff's eye care

during the specified time, they involve collateral issues which hold no probable value, and

introduction of such information would needlessly lengthen the trial. *See id.* At the pre-trial

conference, Defendants agreed that they would not introduce the entire 800 pages of Plaintiff's

medical record. The Court reserves judgment on Plaintiff's motion on this ground and will rule

on individual medical records as they are produced at trial.

Plaintiff filed specific objections to certain portions of the transcript of Defendants' cross-

examination of Dr. Witlin. *See* Dkt. No. 65. The Court has reviewed Plaintiff's objections and

Dr. Witlin's transcript and hereby partially grants Plaintiff's first objection and denies his second.

Dr. Witlin's transcript is stricken from page[3] 60, line 22 through page 63, line 6. Dkt. No. 58 at

60-63. The transcript is allowed without modification on page 73, lines 13-25. *Id.* at 73.

Plaintiff's remaining objections to Defendants' witness and exhibit lists have been addressed by

the motions *in limine*. Dkt. No. 65 at 2-4.

## IV. CONCLUSION

After carefully reviewing the parties' submissions and the applicable law, and for the

above-stated reasons, the Court hereby

**ORDERS** that Defendants' motions *in limine* are **GRANTED in part** and **DENIED in

part** as set forth herein; and the Court further

**ORDERS** that Plaintiff's motions *in limine* are **GRANTED in part** and **DENIED in part**

as set forth herein; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 23, 2015
  Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[3] The page numbers refer to the transcript numbering, not the Court's docket numbering
system.