**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JOHNATHAN JOHNSON,**

                              **Plaintiff,**

   vs.                                                  **9:14-cv-00715
                                                        (MAD/DJS)**

**BRANDI WHITE, Grievance Supervisor, Upstate
Correctional Facility; SCOTT WOODWARD, Grievance
Supervisor, Upstate Correctional Facility; SANDRA
DANFORTH, Deputy Superintendent of Upstate Correctional
Facility; MAUREEN SIENKO, Optometrist Upstate Correctional
Facility; MARTHA STURGEN, Nurse Administrator, Upstate
Correctional Facility,**

                                      **Defendants.**
_____

**APPEARANCES:**                                   **OF COUNSEL:**

**JOHNATHAN JOHNSON
89-A-1042**
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953
Plaintiff, *pro se*

**NEW YORK STATE ATTORNEY**        **STEPHANIE J. CALHOUN, ESQ.**
**GENERAL - BUFFALO**
Main Place Tower
350 Main Street
Suite 300A
Buffalo, New York 14202
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff Johnathan Johnson, an inmate in the custody of the New York State Department

of Corrections and Community Supervision ("DOCCS"), commenced this action pursuant to 42

U.S.C. § 1983 claiming that his constitutional rights were violated while he was incarcerated at Upstate Correctional Facility ("Upstate C.F."). *See* Dkt. No. 5. The case proceeded to a jury trial that lasted from October 26, until October 28, 2015. After Plaintiff rested his case, the Court granted Defendants' Rule 50 motion for judgment as a matter of law. *See* Dkt. No. 93. Currently before the Court is Plaintiff's post-trial motion for reconsideration pursuant to Federal Rules of Civil Procedure 52, 59, and 60, and 28 U.S.C. Sections 144 and 455. *See* Dkt. No. 96.

## II. BACKGROUND

The conduct giving rise to the instant action surrounds a period of time from August 8, 2013 through January 9, 2014, during which Plaintiff alleges he was denied his prescription eyeglasses. Dkt. No. 5; Dkt. No. 45 at 2. Plaintiff was examined by optometrist Defendant Maureen Sienko on August 8, 2013. Dkt. No. 51 at 2. Defendant Sienko determined that Plaintiff was nearsighted and ordered him a pair of new eyeglasses because his previous pair had been broken. *Id.* After a period of approximately 145 days, Plaintiff received his prescription eyeglasses. *See generally* Dkt. No. 5; Dkt. No. 51 at 2-3.

At trial, Plaintiff called eight witnesses, Dr. Richard W. Witlin, Sandra Simonds, Maureen Sienko, Plaintiff, himself, Brandi (White) Collyer, Martha Anne Sturgen, Sandra Lee Danforth, and Scott Woodward. *See* Dkt. Nos. 85, 87. At the close of Plaintiff's case, Defendants' moved pursuant to Federal Rule of Civil Procedure 50 for judgment as a matter of law. In a bench ruling, the Court granted Defendants' motion on three separate grounds: (1) Plaintiff did not establish that his nearsightedness was a serious medical condition; (2) Plaintiff failed to prove each of the five Defendants' deliberate indifference to his alleged serious medical condition; and (3) each of the Defendants were entitled to qualified immunity. *See* Dkt. No. 99.

2

## III. DISCUSSION

**A.     Standard of Review**

### *1. Rule 52(a)(5) & (6)*

Federal Rule of Civil Procedure 52(a)(5) & (6) provides a mechanism for a litigant to question the validity of a previous judgment based upon the sufficiency of the evidentiary support. In a Rule 52(a)(5) motion, party may "question the sufficiency of the evidence supporting the [court's] findings, whether or not the party requested findings, objected to them, moved to amend them, or moved for partial findings." FED. R. CIV. P. 52(a)(5). Further, a finding of fact may only be set aside if it is "clearly erroneous." *Id.* at § 52(a)(6).

### *2. Rule 52(b)*

Rule 52(b) provides that, upon motion from a party, "the court may amend its findings–or make additional findings–and may amend the judgment accordingly." *Id.* at § 52(b). "The purpose of post-judgment motions under Rule 52(b) is to give the district court an opportunity to correct manifest errors of law or fact at trial, or in some limited situations, to present newly discovered evidence." *United States v. Local 1804-1, Int'l Longshoremen's Ass'n*, 831 F. Supp. 167, 169 (S.D.N.Y. 1993). "Thus, to succeed under Rule 52(b), the [movant] must show that the Court's findings of fact or conclusions of law are not supported by the evidence in the record." *Id.*

### *3. Rule 59(a)*

A district court may order a new trial under Rule 59(a) if it concludes that "'"the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice,"' i.e., 'it must view the jury's verdict as 'against the weight of the evidence.'" *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003) (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124,

3

133 (2d Cir. 1998)). However, a Rule 59(a) motion "'may be granted even if there is substantial evidence supporting the . . . verdict,' and . . . 'a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.'" *Id.* (quoting *DLC Mgmt. Corp.*, 163 F.3d at 133-34).

### *4. Rule 60(b)*

Federal Rule of Civil Procedure 60(b) provides six enumerated circumstances whereby a district court may relieve a party from a final judgment, the following three of which may be relevant in this case:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> \* \* \*
>
> (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b).

### *5. 28 U.S.C. §§ 144 & 455*

28 U.S.C. Section 144 provides that a party may raise the question of bias of the presiding judge by raising questions of "personal bias or prejudice either against [the moving party] or in favor of any adverse party." 28 U.S.C. § 144. Such request under this section "shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time." *Id.*

28 U.S.C. Section 455 provides that a judge must disqualify herself "in any proceeding in which [her] impartiality might reasonably be questioned." *Id.* at § 455(a). Section 455(b) lists several specific circumstances in which a judge must disqualify herself from a proceeding, none

of which are applicable in this case. *Id.* at § 455(b). Importantly, "under section 455(a) the bias to be established must be extrajudicial and not based upon in-court rulings." *In re Int'l Bus. Machines Corp.*, 618 F.2d 923, 929 (2d Cir. 1980).

**B.      Plaintiff's Motion**

*1. Reconsideration*

Plaintiff's motion generally re-argues the same points raised at trial and in opposition to Defendants' Rule 50 motion. Significantly, Plaintiff does not point to any newly discovered evidence that was unavailable to him during trial. Liberally construed, Plaintiff's motion argues that the Court committed a clear error in applying several legal standards in granting Defendants' Rule 50 motion. *See* Dkt. Nos. 96, 106. While Plaintiff's contentions arguably do not rise to the level of proof required to state a prima facie claim for reconsideration under any of the previously mentioned Federal Rules, given Plaintiff's *pro se* status, the Court will briefly address each of the alleged legal errors claimed in Plaintiff's motion.

First, Plaintiff contends that "the Court's order granting the Defendants' motion under Rule 50, prior to instruction on deliberate indifference, and serious medical delay, deprived Plaintiff of his constitutional rights under the Seventh Amendment." Dkt. No. 96-1 at ¶ 37 (citing *Berry v. United States*, 312 U.S. 450 (1941)). *Berry* generally stands for the proposition that a Court may not grant a Rule 50 motion for directed verdict if the evidence presented at trial would allow a jury to reach a conclusion in the non-moving party's favor. *Berry*, 312 U.S. at 456. In the instant case, the Court properly applied the standard of review for a Rule 50 motion, and concluded that, viewing all evidence in the light most favorable to Plaintiff, "no reasonable jury could find that [P]laintiff suffered from a serious medical need in the context of an Eighth Amendment claim."

5

*See* Dkt. No. 99 at 10. The Court reached this conclusion after a lengthy discussion of the evidence presented in Plaintiff's case, which was stated as follows:

> Drawing all reasonable inferences from [P]laintiff's testimony, the effects of his moderate myopia include that he suffered from headaches for the entire 145 days that he was without his glasses; that he was unable to see the scenery outside of his exercise area during the one hour a day he was allowed outside, as he was housed in the SHU; that he could not clearly identify other inmates while he was in the general housing area; and that he suffered from eye strain if he read for extended periods of time without his glasses. Plaintiff also testified that he continued to perform his duties as a, quote, law clerk, end of quote, that he was still able to read in his cell and, significantly, that all of his conditions subsided after he received his glasses on January 9, 2014. Plaintiff also testified that he never made a sick call for any of the symptoms that he experienced.

Dkt. No. 99 at 11. Viewing these alleged injuries in light of the factors established in *Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003), the Court determined that no reasonable juror could find that Plaintiff suffered a serious medical condition in the context of an Eighth Amendment claim. *Id.* 11-14. As Plaintiff has failed to identify any additional evidence that would lead the Court to a different conclusion regarding his alleged serious medical condition, the Court finds that it correctly applied the standard of review to the facts presented at trial in granting Defendants' Rule 50 motion.

Second, Plaintiff's reply asserts that the Court did not use the proper standard for determining deliberate indifference for the delay of Plaintiff's medical care. Dkt. No. 106 at ¶¶ 5, 6 (citing *Estelle v. Gamble*, 429 U.S. 97 (1976); *Martinez v. Mancusi*, 443 F.2d 921 (2d Cir. 1970)). Specifically, Plaintiff contends that the Court misconstrued the difference between gross negligence and deliberate indifference. *Id.* at ¶¶ 10-17.

Plaintiff's argument on this ground is unavailing as the Court did not discuss in any part of its decision that any of the Defendants acted with gross negligence. In regards to Dr. Sienko's

failure to contact Plaintiff after he missed a scheduled eye-clinic appointment, the Court concluded that "[t]his course of conduct, at most, illustrates negligence on behalf of Dr. Sienko." Dkt. No. 99 at 19. The Court further concluded that Plaintiff failed to provide evidence that "raise[d] Dr. Sienko's actions above mere negligence." *Id.* Thus, the Court did not hold that any of the Defendants' actions amounted to gross negligence, which is similar in many respects to deliberate indifference, but that they may have, at most, amount to ordinary negligence. *See Doe v. N.Y.C. Dep't of Social Serv.*, 649 F.2d 134, 144 n.5 (2d Cir. 1981) (stating that the district court properly rejected a jury instruction that equated ordinary negligence with deliberate indifference). Thus, the Court's conclusion that a showing of mere negligence, without more, is insufficient to sustain a cause of action for deliberate indifference applied the proper legal analysis on this point. *See Martinez v. Mancusi*, 443 F.2d 921, 923 (2d Cir. 1970) (citing *Church v. Hegstrum*, 416 F.2d 499, 450-51 (2d Cir. 1969)) ("Mere negligence in giving or failing to supply medical treatment alone will not suffice [to prove an Eighth Amendment violation]"). Accordingly, the Court properly applied the standard to establish deliberate indifference for an Eighth Amendment claim based on the failure to provide medical care that a showing of mere negligence is not sufficient.

Third, liberally construed, Plaintiff's reply argues that the Court improperly held that an actual injury must be established to find deliberate indifference from a delay in medical care, rather than the delay in medical care merely creating a substantial risk of serious harm. Dkt. No. 106 at ¶¶ 20-22 (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004)). Plaintiff misconstrues the Sixth Circuit's holding in *Blackmore*. In that case, the court held that the delay need not produce an actual injury to amount to deliberate indifference if "the seriousness of a prisoner's needs for medical care is obvious even to a lay person . . . ." *Blackmore*, 390 F.3d at 899. In such a case where "prison officials are aware of a prisoner's

7

obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, . . . the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition." *Id.* Thus, the holding in *Blackmore* that a delay in providing medical care need not exacerbate a plaintiff's injury to amount to deliberate indifference is predicated upon a finding that the plaintiff suffered an "obvious and serious need for medical treatment." *Id.* In this case, the Court correctly determined at the outset of its decision that Plaintiff did not suffer a serious medical condition. Moreover, the Court held that none of the Defendants had any reason to believe that Plaintiff was experiencing any negative medical implications as a result of not having his glasses since he never made a sick call for his symptoms and his grievance letters never mentioned his alleged injuries. *See* Dkt. No. 99 at 22 ("Strikingly absent from all of [P]laintiff's complaints and inquiries, however, is any mention of how being without prescription glasses adversely impacted his health or his daily activities"). Accordingly, Plaintiff's case did not present a situation where he showed an "obvious and serious need for medical treatment," such that a mere delay in treatment, without more, amounted to deliberate indifference.

Lastly, Plaintiff claims that the Court erred by crediting Defendants' testimony in ruling on the Rule 50 motion. Dkt. No. 106 at ¶¶ 38-52. Plaintiff's argument on this point is misplaced, as the Court is not prohibited from citing a Defendant's testimony, and may properly rely on testimony of Defendants at trial, but simply cannot pass judgment on the credibility of those witnesses. In the Rule 50 decision, the Court properly drew "all reasonable inferences in [P]laintiff's favor." Dkt. No. 99 at 10. Thus, the Court applied the appropriate standard of considering evidence from all witnesses and deciding any conflicts in that evidence in the light most favorable to Plaintiff. *See Weldy v. Piedmont Airlines*, 985 F.2d 57, 60 (2d Cir. 1993) ("The

8

nonmovant must be given the benefit of all reasonable inference, because the trial court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury"). Accordingly, the Court finds that Plaintiff has failed to introduce any new evidence or provide a compelling argument that the Court misapplied the law to reach a seriously erroneous result in granting Defendants' Rule 50 motion.

### 2. *Disqualification*

Plaintiff raises numerous arguments for why the Court was biased in deciding his case and why it should be disqualified from any further proceedings. Plaintiff contends that "the DOCCS staff at Upstate had written communications to the office of the Attorney General . . . fabricating [Plaintiff's] alleged violences [sic] conduct against prison guards during court[] proceedings." Dkt. No. 96-1 at ¶ 4. Plaintiff contends that he was required to wear handcuffs and leg restraints during the course of the trial as a result of these allegedly false reports. *Id.* at ¶ 5. Plaintiff alleges that the reliance on these violence reports and subsequent ruling that he remain handcuffed during the proceedings evidences this Court's lack of impartiality to hear his case or decide the instant motion. *Id.* at ¶ 6. While Plaintiff is correct that the Court received a disciplinary report regarding Plaintiff's behavior during the course of the trial, *see* Dkt. No. 92; Dkt. No. 101-1 at 29-30, the receipt of this record does not indicate bias in any manner.

The use of shackles to restrain prisoners in a civil case is appropriate in certain circumstances. *See DeLeon v. Strack*, 234 F.3d 84, 87-88 (2d Cir. 2000). A trial court may exercise its discretion to order restraints "to maintain safety and security, [if it] imposes no greater restraints than are necessary and takes steps to minimize the prejudice flowing from the restraints." *Id.* at 88; *see also Davidson v. Riley*, 44 F.3d 1118, 1122 (2d Cir. 1995); *Hameed v.*

*Mann*, 57 F.3d 217, 222 (2d Cir. 1995).  Here, the Court placed its reasoning on the record for keeping Plaintiff in restraints:

> THE COURT: All right. While we're in here without the jury being present, I want to discuss whether or not I will keep Mr. Johnson partially or fully restrained during the trial.  I'll note for the record that Mr. Johnson has an extremely lengthy disciplinary record from the period of his incarceration. The disciplinary record includes many instances of violent conduct, insubordinate conduct, unhygienic conduct; and in reviewing that disciplinary record, it appears to me that I should have significant concern about Mr. Johnson's presence in the courtroom as it relates to the safety of everyone in the courtroom.  Just last Friday, I was advised that when Mr. Johnson was -- when DOCCS was attempting to move Mr. Johnson closer to Albany for the trial that he refused a direct order, made threats, threats of violence, and created a disturbance, and that his behaviors were violent.
>
> * * *
>
> THE COURT: Okay. What I'm going to do for the time being is I'm going to have his leg restraints remain on and I would like, for the time being, his hands restrained, but not with the black box and the waist chain, so before we get the jury pool in here, would you take as much time as you need, and I will say to you, Mr. Johnson, and your counsel, that if I see the slightest, it could even just be a precipitous move on your part, or a facial expression that concerns me, I will have you fully restrained during the course of the trial.

Dkt. No. 108 at 2-3.  The Court was presented not only with the misbehavior report from Plaintiff's encounter with prison guards immediately preceding the trial, but also reviewed Plaintiff's voluminous 92 page disciplinary record from his tenure at Upstate C.F. in deciding the place Plaintiff in restraints during the course of the trial.  *See* Dkt. No. 61.  Thus, notwithstanding that Plaintiff's failure to prove that the disciplinary report received during the course of the trial was fabricated, the issuance of this report did not form the sole basis for the Court's decision to

10

shackle Plaintiff, such that the reliance upon this report does not establish bias on the Court's behalf.[1]

Plaintiff further alleges that the Court was biased against him because he refused to consent to the dismissal of certain Defendants during the final pretrial conference, *id.* at ¶ 7, and because a prison guard brought a picture of Plaintiff wearing eye glasses during the relevant time period of this case to the Court's attention during the pendency of the trial, *id.* at ¶ 8. The Court notes that neither of these issues presents a grounds for disqualification because they were each addressed by formal decisions during the pendency of the trial. *See In re Int'l Bus. Machines Corp.*, 618 F.2d 923, 929 (2d Cir. 1980) ("[U]nder section 455(a) the bias to be established must be extrajudicial and not based upon in-court rulings").

During the course of the trial, a prison guard presented the Court with a prison transport photograph containing a picture of Plaintiff wearing eyeglasses. The picture was purportedly taken during the period of time that Plaintiff claimed he was required to live without glasses. The Court ruled that this picture could not be introduced for evidentiary or impeachment purposes because it had not been identified prior to the commencement of trial. Thus, far from showing the Court's bias against Plaintiff, the evidentiary ruling to exclude the photograph from being introduced was in Plaintiff's favor. An alternative ruling allowing the jury to consider the picture of Plaintiff wearing eyeglasses during the time that he claimed he did not have his glasses would have undoubtedly been fatal to Plaintiff's case. Accordingly, Plaintiff has presented no credible grounds to question the Court's impartiality and his motion is denied on this ground.

---

[1] The Court also notes that, while not on the record, Plaintiff acted out aggressively on at least one occasion during trial, shouting "you stupid old bitch" after the Court issued its decision on Defendants' Rule 50 motion.

11

## IV. CONCLUSION

After carefully reviewing the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion (Dkt. No. 96) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 15, 2016
Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge